IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OPTIMORPHIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-1336-MN |
| | ) | |
| AKAMAI TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Akamai Technologies, Inc. ("Defendant" or "Akamai") to dismiss the First Amended Complaint. (D.I. 16). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED-IN-PART and DENIED-IN-PART.

I. **BACKGROUND**

On December 6, 2024, Plaintiff OptiMorphix, Inc. ("Plaintiff" or "OptiMorphix") sued Defendant for patent infringement, alleging that Defendant infringes various claims of U.S. Patent Nos. 7,099,273 ("the '273 Patent"), 7,616,559 ("the '559 Patent"), 9,275,167 ("the '167 Patent"), 10,412,388 ("the '388 Patent"), 9,894,361 ("the '361 Patent"), 9,936,040 ("the '040 Patent") and 9,167,021 ("the '021 Patent") (collectively, "the Asserted Patents"). (*See* D.I. 1). The Asserted Patents are generally directed to networking, communications or video technology.

On February 27, 2025, Defendant moved to partially dismiss the original Complaint, arguing that the claims of the '559 Patent were directed to ineligible subject matter under 35 U.S.C. § 101 and, further, that the Complaint failed to plausibly allege direct infringement of the '273 Patent, induced and willful infringement of the '167 Patent, or compliance with the marking requirements of 35 U.S.C. § 287(a). (D.I. 10 & 11). In response, on March 14, 2025, Plaintiff filed its First Amended Complaint, which added allegations seemingly to address the issues raised

by Defendant. (D.I. 13). On March 28, 2025, Defendant renewed its motion to dismiss, arguing that the claims of the '559 Patent remain patent ineligible under § 101 and that the First Amended Complaint does not adequately allege direct, induced or willful infringement of various Asserted Patents. (D.I. 16; *see also* D.I. 17 & 18). Defendant also maintains its argument that Plaintiff has failed to plead compliance with the marking statute. (D.I. 17 at 19-20). The motion is fully briefed. (D.I. 19 & 20).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

B.        Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent.  35 U.S.C. § 101.  The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101:  laws of nature, physical phenomena and abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216.  A claim to any one of these three categories is directed to ineligible subject matter under § 101.  "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78.  First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

3

1.    Step One of the *Alice* Framework

At step one of *Alice*, the "claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2.    Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (internal quotation marks and citation omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their

combination are well-understood, routine or conventional to a person of ordinary skill in the art is a question of fact.  *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101."  *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at * 5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## III.   DISCUSSION

Defendant seeks dismissal of the First Amended Complaint in its entirety because Plaintiff has failed to plausibly allege direct infringement for any Asserted Patent or induced or willful infringement for nearly all of the Asserted Patents and, further, because the '559 Patent is directed to ineligible subject matter under § 101.  Defendant also seeks dismissal of any claim for pre-suit damages because Plaintiff purportedly does not comply with the marking requirements of § 287(a).  The Court will begin with Defendant's § 101 arguments.

### A.   Patent Eligibility of the '559 Patent

The '559 Patent, which is titled "Multi-Link Network Architecture, Including Security, in Seamless Roaming Communications Systems and Methods," is generally directed to a "communications system for providing secure communications of information over multiple communications links."  ('559 Patent at Abstract).  Plaintiff alleges that Defendant directly and indirectly infringes at least claim 5 of the '559 Patent.  (D.I. 13 ¶¶ 125-26).

Claim 5 is an independent claim and it recites:

5. A method of communications, comprising:

detecting a first communications link having first security, for communications of information between a client device and a server device;

detecting a second communications link having second security, for communications of information between the client device and the server device;

selecting the first communications link, having first security, for communicating between the client device and the server device if available;

if the first communications link is not available, selecting the second communications link, having second security, for communicating between the client device and the server device;

linking to one of either the first communications link and the second communications link at each instant, to maintain communicative connectivity during communications between the client device and the server device;

reconnecting to the first communications link for communicating information between the client device and the server device, if communications are hindered over the second communications link; and

reconnecting to the second communications link for communicating information between the client device and the server device, if communications are hindered over the first communications link.

('559 Patent at Claim 5). Claim 6 is the only claim that depends from claim 5, and it adds that the step of selecting the second communications link follows the step of selecting the first communications link. (*Id.* at Claim 6). Claim 1 is a system for maintaining communications between over a first or second communications link that largely tracks the elements of the method in claim 5. (*Id.* at Claim 1). The remaining claims all ultimately depend from claim 1 and add limitations regarding the linking components (claims 2 and 3) and data packets (claims 4 and 7).

Without any real analysis, Defendant asserts that claim 5 is representative of all claims of the '559 Patent. (*See* D.I. 17 at 4). Plaintiff disagrees. (D.I. 19 at 12-13). Plaintiff has seemingly limited its case for the '559 Patent to the method claims (*i.e.*, claims 5 and 6). (*See* D.I. 13 ¶ 129 ("OptiMorphix has, at all times in this action, only asserted method claims of the patents-in-suit,

including the '559 Patent."); *see also* D.I. 19 at 20 ("Here, the original Complaint, like the [First Amended Complaint], only asserted method claims"); D.I. 20 at 3 n.2). And Defendant has no counterclaims of ineligibility. In the Court's view, the patent eligibility of only claims 5 and 6 may be decided under these circumstances. *See, e.g.*, *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1355-56 (Fed. Cir. 2024) ("Because [Plaintiff] narrowed the scope of claims at issue . . . and both parties knew which claims were at issue before the court ruled on the motion . . ., the district court had no jurisdiction over the unasserted claims [of the asserted patent]."); *see also Hantz Software, LLC v. Sage Intacct, Inc.*, 2023 WL 2569956, at *1 (Fed. Cir. Mar. 20, 2023) (non-precedential) (vacating district court's judgment of ineligibility that extended to non-asserted claims where plaintiff clearly limited asserted claims before § 101 decision and defendant had not asserted counterclaims of ineligibility against all claims).

As to whether claim 5 is representative of claim 6, Defendant argues that it is because claim 6 only adds an implicit step that adds "nothing non-abstract." (D.I. 17 at 10). Although Plaintiff does challenge representativeness generally, Plaintiff never articulates any basis for distinguishing claim 5 from claim 6. (*See* D.I. 19 at 13). Plaintiff thus failed to carry its burden to adequately dispute representativeness. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290-91 (Fed. Cir. 2024). The Court will accordingly treat claim 5 as representative of claim 6.

1.    Step One of the *Alice* Framework

At step one, Defendant argues that claim 5 is directed to the abstract idea of "using alternative communication options to stay in contact." (D.I. 17 at 5). In Defendant's view, the claims broadly and generically recite a method of switching between communication links without specifying any particular way of achieving the switch. (*Id.* at 6-7). Pointing to historical examples of individuals staying in touch when one mode of communication becomes unavailable (*e.g.*, using

a two-way radio when telephone lines are not usable), Defendant insists that the '559 Patent claims are directed to nothing more than a longstanding human activity. (*Id.* at 5-6).

Plaintiff argues that Defendant has oversimplified the claims and, in doing so, ignored the claimed technological improvement. (D.I. 19 at 4). Specifically, in Plaintiff's view, claim 5 is directed to "a specific method for maintaining secure communications by prioritizing links with different security levels" and switching to a second communications link when necessary. (*Id.*). All of the '559 Patent claims, according to Plaintiff, are directed to specific "method[s] of improving computer network communications by utilizing a security-based link prioritization and automatic failover mechanism that maintains connectivity between devices." (*Id.* at 5).

At *Alice* step one, claims directed to an improvement in computer functionality are generally patent-eligible. *See, e.g.*, *Enfish*, 822 F.3d at 1335-36; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-06 (Fed. Cir. 2018). In contrast, claims that aim to improve an abstract idea by merely invoking a computer as a tool are generally not patent-eligible. *See, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315-18 (Fed. Cir. 2021); *Berkheimer*, 881 F.3d at 1366-67; *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). The Court ultimately agrees with Defendant that the claims are directed to an abstract idea – not to an improvement in the functioning of technology.

In arguing that the claims are directed to a technological improvement at step one, Plaintiff relies on *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020). There, the claims were directed to a method of providing multi-level security in a data network, where the method required use of an object-oriented key manager and use of labels and encryption to manage access. *Id.* at 1295-96. According to the specification, prior methods of achieving multi-level security in data networks required encryption keys at more than one level. *Id.* at 1295. That security process, however, was cumbersome and difficult to manage, particularly when secure data was sent to large groups of people. *Id.* Focusing on the labeling and encryption claim elements, the Federal Circuit found that the claims allowed data to be securely sent to multiple people (encryption) while ensuring that only the intended recipients received and accessed the files (labeling). *Id.* at 1295-96. The *TecSec* claims therefore attempted to solve a problem rooted in data networks and achieved the solution in a specific way through the encryption and labeling claim elements. The claims here are very different.

Claim 5 of the '559 Patent is directed broadly to a "method of communications." Plaintiff's asserted technological improvement – maintaining secure communications by prioritizing certain links based on different security levels – is not captured by the language of the claim. Claim 5 only requires detecting a first communications link and a second communications link between a client and server device, each link having a corresponding security level. ('559 Patent at 14:18-23). The first link is then selected "if available" – otherwise, the second link is selected. (*Id.* at 14:24-30). And if communications are hindered over either of the two communications links, the claim requires reconnecting to the other available link. (*Id.* at 14:35-42). No other limitation relates to which link is selected. (*See id.* at Claim 5). There is no limitation requiring the first link to have a higher level of security than the second link. Nor is there any requirement that any

decisions about which link to select be based on security. Plaintiff's asserted technological improvement is simply not found in claim 5 of the '559 Patent. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC¸* 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis.").

Aside from this security-prioritization argument, Plaintiff also argues that claim 5 includes specific technological solutions by reciting "link detection," "find best path," "link handover" and "auto reconnect" techniques.[1]  (D.I. 19 at 6; *see also* '559 Patent at 2:48-50 (link detector); *id.* at 5:55-63 (link handover); *id.* at 5:52-55 (best path); *id.* at 5:63-6:5 (auto-reconnect)). The Court is unpersuaded. The "link detection" steps of claim 5 are recited in mere functional language, effectively claiming the result of detecting communications links rather than any particular way of achieving the result. *See Mobile Acuity*, 110 F.4th at 1292-93; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340-41 (Fed. Cir. 2017) (finding a generic "detecting" limitation abstract). Similarly, the "link handover," "find best path"[2] and "auto connect" techniques generically recite the idea of switching between links without any indication of how availability determinations are made or how handovers are effectuated (automatically or otherwise). *See Innovation Sciences, LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019) ("Neither the claims nor the specification recite any specific way to carry out" the "idea of

---

[1]    Plaintiff also argues that the "link detector" constitutes a separate technological improvement. (D.I. 19 at 6). But claim 5 does not actually include a "link detector" limitation. (*Compare* '559 Patent at Claim 5, *with id.* at Claim 2). The "link detector" therefore cannot evidence a technological improvement in claim 5. In fact, to the extent that Plaintiff is arguing any specific technological components exist in claim 5 to accomplish these techniques, they are found nowhere in the claim.

[2]    Plaintiff does not indicate which limitation of claim 5 captures the "best path" improvement. (*See* D.I. 19 at 6). Because the specification describes that "WIP engine 138 further determines a best one or more of the links for effecting the communications" ('559 Patent at 5:52-55), the Court will assume that Plaintiff is referring to the same limitations as meant by the "link detection" and "link handover" limitations.

switching to a more secure server"); *People.AI, Inc. v. Clari Inc.*, 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023) (automation benefits not enough to save claim from abstraction). That these are not technological improvements is further supported by the lack of detail in the specification regarding how each of these functions are implemented. *See Miller Mendel*, 107 F.4th at 1352 (using the specification to "confirm[] that the asserted claims are directed to an abstract idea").

In fact, all of the elements of claim 5 are broad, describing in generic functional language that two communications links with security are detected, one communications link is selected and, if necessary, switching between (and reconnecting to) the links occurs. (*See* '559 Patent at Claim 5). These limitations amount to a patent on the result of communications link detection and selection, rather than a concrete way of achieving that result. Ultimately, the Court finds that claim 5 is analogous to certain claims found abstract in *Two-Way Media*, 874 F.3d at 1337. There, the claims were to methods of transmitting streaming data over a network, where the claims recited "converting," "routing," "controlling," "monitoring" and "accumulating records" steps in bare functional language. *Id.* at 1334-35. As the Federal Circuit explained, without the claim describing "how to achieve these results in a non-abstract way," the claims were merely directed to the abstract idea of sending, directing, monitoring and recording receipt of data. *Id.* at 1337-38. The same is true here. There is nothing in claim 5 that indicates ***how*** the communications link detection, selection or reconnection is achieved. Viewed as a whole, claim 5 is directed to detection and selection of communications links without regard to how that is achieved – that is an abstract idea.

Although the Court agrees that claim 5 is directed to an abstract idea, Defendant's proposed abstract idea is overly generalized when compared to the claim language. *See Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024). In the Court's view, claim 5 is instead

directed to the abstract idea of selecting and switching among available communications links. Given that Plaintiff identifies no meaningful distinction between claims 5 and 6 for § 101 purposes, the Court's conclusion also applies to claim 6. Both claims are directed to the same abstract idea.

### 2.    Step Two of the *Alice* Framework

At step two, Defendant argues that there is no inventive concept in the '559 Patent claims because the only components recited in the claims – "communications link," "client device" and "server device" – are all well known and conventional components. (D.I. 17 at 8). According to Defendant, the claims are not tethered to any unique technology and are instead drafted in "exceptionally generic terms." (*Id.*). Defendant further argues that the specification makes clear that the claimed communications links, client and server devices, and first and second security can be any device or functionality. (*Id.* at 8-9 (citing '559 Patent at 4:10-14, 4:24-35, 7:26-31, 9:5-14 & 9:30-44)). All that is left – the ordered combination of claim elements – is unable to save the claims in Defendant's view because it is the "natural order" of the steps. (D.I. 17 at 9).

Plaintiff argues that it has sufficiently alleged a saving inventive concept in the First Amended Complaint. (D.I. 19 at 18). There, Plaintiff alleges that the '559 Patent teaches a "multi-link architecture" that uses "dedicated components" such as a link detector, pathfinder, link handover and auto-reconnector. (D.I. 13 ¶¶ 31-33). The problem with Plaintiff's argument, however, is that claim 5 does not recite or require those specific components. Nor does claim 6. Both claims are broadly directed to methods of communications with generic steps for achieving that communication – but agnostic as to the specific technology that accomplishes the method. Because the components are found nowhere in the claims at issue, the allegations in the First Amended Complaint regarding these components are unable to provide a saving inventive concept. *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024)

("Conclusory allegations or those 'wholly divorced' from the claims or the specification cannot defeat a motion to dismiss." (internal citations omitted)).

Relying on additional allegations from the First Amended Complaint, Plaintiff also argues that the "dual-detection mechanism" of the '559 Patent is relevant at step two because it is "a technological method aimed at ensuring secure data transmission." (D.I. 19 at 8 (quoting D.I. 13 ¶ 36)). Plaintiff does not cite any part of the specification to support this or any other assertion in Paragraph 36. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). In fact, the very next assertion is wholly untethered from the claims themselves. Plaintiff alleges that the '559 Patent provides a technological improvement "through identifying, selecting, and managing communication links ***based on*** their security levels and availability" (D.I. 13 ¶ 36 (emphasis added)) but, as discussed above, the selecting and reconnecting steps of claim 5 need not be based on security at all. *AI Visualize*, 97 F.4th at 1380; *see also Am. Axle.*, 967 F.3d at 1299 ("This amounts to no more than a restatement of the assertion that the desired results are an advance.").[3] Paragraph 35 is likewise of no avail, merely describing the purported benefits of switching between available communications links to avoid communication disruptions. (D.I. 13 ¶ 35). But that has nothing to do with whether the invention in claim 5 accomplishes that result in a way that involves more than well understood, routine and conventional activity in the industry.

In its step two arguments, Plaintiff also rehashes its technological improvement argument presented at step one and further argues that claim 5 contains an inventive concept by "explicitly accounting for security features in the link selection process." (D.I. 19 at 9 (citing D.I. 13 ¶ 32)).

---

[3]    In fact, none of the claims of the '559 Patent require link selection or handover be based on a security reason.

And as to the ordered combination of elements in claim 5, Plaintiff argues that the order does provide an inventive concept and is supported by the allegations in the First Amended Complaint. (D.I. 19 at 9-10 (citing D.I. 13 ¶ 35)).  Specifically, Plaintiff argues that the steps of "detecting links with different security levels, selecting based on availability and security, maintaining connectivity through active link management" combined together solve the problem of ensuring reliable secure communication.  (*Id.*).  But again, claim 5 does not require security to factor into the link selection.  That cannot be an inventive concept that saves the claims, whether individually or part of an ordered combination.

As to conventionality, Plaintiff argues that "the client and server devices" are not generic and the "first security" and "second security" features are not abstract in light of the specification's teaching that devices are part of a "multi-link network architecture."[4]  (D.I. 19 at 10-11 (citing '559 Patent at 3:54-4:35 (client and server devices) & 2:15-25, 6:38-64 (first and second security)). The Court disagrees.  The specification teaches that the client, server and security components can be generic computers or any relevant technology operating in a conventional way.  ('559 Patent at 4:29-31 ("The client 104 and the server 106 are each, for example, computing devices with digital packetized data communications capability, for instance, they are computers equipped with modems or other network interface and communication features."); *id.* at 7:27-33 ("[T]he server 106 can be one or more communication devices (for example, a single computer or or [sic] a multi-setup, such as a server bank or farm) . . . . The server 106 can include conventional server features, for example, a login server, a session controller, and others."); *id.* at 9:10-14 ("For example, a

---

[4]     Whether these components are part of a "multi-link network architecture that implements security at the transport packet layer" is irrelevant (D.I. 19 at 10) because that concept (inventive or not) is not found in claim 5 (or claim 6).  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed Cir. 2019) ("[T]he specification cannot be used to import details from the specification if those details are not claimed.").

processing device, such as a computer, that is communicatively connected to the network 102 can function and perform the operations of the client 104 and the server 106, as applicable according to the communications being conducted."); *id.* at 6:43-47 ("The security component, such as comprising the cipher API 141 and the cipher library 130, is any of a variety of security applications operable on the client, such as a firewall application, an encryption scheme, ***or any others or combination***." (emphasis added)).  General purpose computer technology operating in conventional ways is insufficient to provide an inventive concept.  *See Bascom*, 827 F.3d at 1349 ("An inventive concept . . . cannot simply be an instruction to implement or apply the abstract idea on a computer.").

In viewing the elements of claim 5 and their ordered combination, there is no inventive concept that transforms the claim into something significantly more than the abstract idea of selecting and switching between available communication links.  As discussed above, the client, server and security components can all be generic computers and computer security components (*e.g.*, firewall, etc.).  The same is true for the links themselves.  (*See also* '559 Patent at 10:45-48 ("As with all of the Link 1, Link 2, and Link 3, various wired, wireless, or other physical communicative links and modes can be interconnected forming the links 102*a*, 102*b*, and 102*c*, ***as is conventional***." (emphasis added))).  There is no indication that any of this conventional technology is functioning in a unique or unconventional way.  The remaining elements of claim 5 are the steps of "detecting" communications links, "selecting" the desired communications link and "reconnecting" to one of the links when communication over the other is "hindered" – the instructions for performing the abstract idea.  But the abstract idea itself cannot provide a sufficient inventive concept.  *See, e.g.*, *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1363-64 (Fed. Cir. 2020); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019).  And

the steps in claim 5 follow logical order – *i.e.*, selecting a first communications link if available but selecting the second if the first is not available and reconnecting to the other link if communications become hindered after the original selection. The generic functional nature of the limitations – and the logical ordering of the steps – further demonstrates that no inventive concept exists in claim 5. *See Two-Way Media*, 874 F.3d at 1339 (no inventive concept in claim that uses generic functional language and "conventional ordering of steps – first processing the data, then routing it, controlling it, and monitoring its reception – with conventional technology to achieve its desired result"). Because Plaintiff has identified no meaningful distinction for claim 6, and the Court similarly finds none, claim 6 also lacks an inventive concept.

Finally, contrary to Plaintiff's suggestion (D.I. 19 at 11), the Court is unpersuaded that a fact issue exists at step two such that dismissal is inappropriate now. Although fact issues may preclude dismissal at the pleading stage, the allegations here do not raise any fact issues. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-30 (Fed. Cir. 2018). To survive a motion to dismiss based on allegations in a complaint, a patent owner must "adequately allege their claims contain [an] inventive concept[]." *Id.* at 1127-28. Here, Plaintiff's specific allegations are untethered from the claims because the allegations relate to selecting communication links partially "based on their security levels." (D.I. 13 ¶ 36). That concept is found nowhere in claim 5 (or any other claim). The allegations found in the First Amended Complaint thus do not preclude dismissal. *Cellspin*, 927 F.3d at 1317-18 ("[W]e do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss."). And because the specification makes clear that claims 5 and 6 involve only generic computing technology to implement the abstract idea, there are no allegations that Plaintiff could add to change the § 101 result. Amendment would be futile.

Because claims 5 and 6 are directed to the abstract idea of selecting and switching between available communications links without any saving inventive concept, the claims are directed to ineligible subject matter under § 101. The Court recommends dismissal of Plaintiff's claims of infringement of claims 5 and 6 of the '559 Patent and that the dismissal be with prejudice.

## B.    Direct Infringement

In the First Amended Complaint, Plaintiff repeatedly alleges that Defendant "designs, makes, sells, offers to sell, imports and/or uses" methods claimed by each of the Asserted Patents. (D.I. 13 ¶¶ 78-79, 104-05, 143-44, 156-57, 181-82, 208-09 & 230-31).[5] Where, as here, the asserted claims are method claims, it is well-established that direct infringement exists only where there is performance of every step of the claimed method. *See Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced."); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) ("The sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)."). Defendant seeks to dismiss all claims of direct infringement on the basis that Plaintiff failed to plausibly allege that Defendant performed each and every step of the claimed methods. (D.I. 17 at 17-19).

As an initial matter, the Court notes that Plaintiff's use of the ambiguous and disfavored "and/or" language makes it unclear what activity under § 271(a) is accused of infringement. *See APS Tech., Inc. v. Vertex Downhole, Inc.*, C.A. No. 19-1166 (MN), at 68:5-24 (D. Del. July 23,

---

[5]    The Court does not address the sufficiency of any infringement allegations for the '559 Patent because those claims should be dismissed with prejudice based on ineligibility.

2020), D.I. 50.  Because only method claims are asserted, the Court recommends that any claim of direct infringement based on any activity other than "use" be dismissed.  *See DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, C.A. No. 18-098 (MN), 2019 WL 3069773, at *2 (D. Del. July 12, 2019) (dismissing direct infringement based on "making, selling, offering to sell or importing" because law forecloses claim of direct infringement of method based on manufacture or sale of accused device).  That dismissal should be with prejudice.

As to "use" under § 271(a), however, the Court finds that Plaintiff has sufficiently alleged direct infringement by Defendant.  Although Defendant argues that there are no plausible allegations that Defendant – rather than a consumer – performs every step of the claimed methods (D.I. 17 at 17-19), the Court disagrees.  Plaintiff alleges that Defendant tests the accused products.  (*See* D.I. 13 ¶¶ 100, 147, 174, 201, 223 & 247).[6]  And Plaintiff alleges – in detail – how use of the accused products infringes various claims of the Asserted Patents.  (*See, e.g.*, *id.* ¶¶ 135-143).  It is thus plausible to infer that Defendant tested its own products and that that testing constitutes an act of infringing "use" under § 271(a).  *See Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, C.A. No. 18-1717-MN-CJB, 2021 WL 149023, at *3 (D. Del. Jan. 15, 2021).  Plaintiff's claims of direct infringement for each of the Asserted Patents are sufficiently pled and, as such, the Court recommends that Defendant's motion be denied as to direct infringement.

## C.    Induced and Willful Infringement

Defendant seeks dismissal of all claims of induced and willful infringement on multiple grounds:  failure to allege pre-suit knowledge for any Asserted Patent (D.I. 17 at 12-14), inability to assert post-suit induced or willful infringement (*id.* at 14-16), and failure to plausibly allege

---

[6]     Defendant largely ignores the testing allegations.  (*See* D.I. 18 (opening brief silent); D.I. 20 (reply brief conclusorily asserting that these allegations are "speculation")).

knowledge of the patents or intentional infringement thereof to support a claim of willful infringement (*id.* at 14-17).  The Court addresses each ground in turn.

### 1.     <u>Pre-Suit Induced and Willful Infringement</u>

Defendant's first argument is that Plaintiff failed to sufficiently allege pre-suit induced and willful infringement of the Asserted Patents.  (D.I. 17 at 12-14).  Induced infringement requires a finding that the "defendant knew of the patent and that 'the induced acts constitute patent infringement.'"  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  Willful infringement also requires a finding that the defendant knew of the patent and its infringement of that patent.  *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987-88 (Fed. Cir. 2021).  In Defendant's view, Plaintiff has not plausibly alleged that Defendant had the requisite pre-suit knowledge of the Asserted Patents or the infringement thereof to support either a claim of inducement or willfulness. (D.I. 17 at 13-14).  The Court agrees.

Turning first to knowledge of the patents, Plaintiff does not adequately plead pre-suit knowledge of any of the Asserted Patents.  As to the '167 Patent, Plaintiff alleges that Defendant cited the '167 Patent during prosecution of one of its own patents (D.I. 13 ¶ 150), but the Court agrees with Defendant that that basis for pre-suit knowledge is untenable (D.I. 17 at 13).  The '167 Patent was never cited during prosecution of Defendant's patent (U.S. Patent No. 9,729,605). Recognizing this, Plaintiff admits that the allegation – as worded – is incorrect.  (D.I. 19 at 14 n.1).[7]  Plaintiff argues that it is nevertheless plausible that Defendant had pre-suit knowledge of

---

[7]    Plaintiff was on notice of the factual error regarding the '167 Patent based on Defendant's original motion to dismiss.  (*See* D.I. 11 at 11-12 (original motion to dismiss discussing the factual inaccuracy of Plaintiff's claim that Defendant had pre-suit knowledge of the '167 Patent)).  Defendant and the Court should not have to waste time "conducting fact-checking that should have already been performed by Plaintiff *before* [it] filed" the original Complaint.  *Mullins v. Duquesne Univ. of the Holy Spirit*, C.A. No. 25-1366, 2025 WL

the '167 Patent because that patent shared a common specification with another patent cited during prosecution of Defendant's patent. (D.I. 19 at 14-15). But this theory, even if it could establish pre-suit knowledge of the '167 Patent, is found nowhere in the First Amended Complaint with plausible factual allegations. Plaintiff has thus failed to adequately plead pre-suit knowledge of the '167 Patent. As to the remaining patents, the First Amended Complaint contains no allegations at all regarding pre-suit knowledge of the Asserted Patents. And Plaintiff does not contend otherwise. (*See* D.I. 19 at 13-15 (Plaintiff's opposition limited to defending pre-suit knowledge of the '167 Patent)). Without any plausible allegations regarding pre-suit knowledge of the Asserted Patents, Plaintiff's claims of pre-suit induced and willful infringement must fail.

Plaintiff also fails to plausibly allege that Defendant had the requisite pre-suit knowledge of infringement of the Asserted Patents. (*See* D.I. 13 ¶ 150; *see also id.* ¶¶ 77-252). That is also fatal to Plaintiff's claims of pre-suit inducement and willfulness. *See AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024); *Wonderland Switzerland AG v. Evenflo Co.*, — F.4th —, 2025 WL 3648495, at *7-8 (Fed. Cir. 2025). The Court thus recommends dismissal of any claim of pre-suit induced or willful infringement of the Asserted Patents and that dismissal be without prejudice.

2.    <u>Post-Suit Induced Infringement</u>

Defendant next argues that the original Complaint cannot supply the knowledge requirement for post-suit induced (or willful) infringement. (D.I. 17 at 14-16). Courts – including those within this district – disagree on whether a complaint can provide the requisite knowledge for post-suit induced infringement. *Compare DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 199-200 (D. Del. 2023) (Bryson, J., sitting by designation) (recognizing the intra-district split and adopting the "majority position" that the complaint can establish knowledge for

_____

3496167, at *2 (W.D. Pa. Dec. 5, 2025). That Defendant put Plaintiff on notice of the error and Plaintiff failed to correct it in the First Amended Complaint is unacceptable.

a post-suit induced infringement claim), *and DoDots*, 2019 WL 3069773, at *3 (Noreika, J.) (holding that the complaint alone can establish post-suit induced infringement), *with ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021) (Connolly, J.) (holding that the complaint alone cannot establish knowledge for post-suit induced infringement).

Given that the district judge presiding over this case has previously decided that the knowledge necessary to support a claim of post-suit induced infringement can be supplied by an earlier complaint, the undersigned concludes that Defendant's theory is unavailable here.[8] *See DoDots*, 2019 WL 3069773, at *3. In the original Complaint, Plaintiff accused Defendant of infringing the Asserted Patents with specifics on how that infringement allegedly occurred; in the First Amended Complaint, Plaintiff maintains those infringement claims for the Asserted Patents. The original Complaint thus established the requisite knowledge of the patents and infringement thereof to support a claim of post-suit inducement for all Asserted Patents other than the '273 Patent.[9] Defendant's motion to dismiss the post-suit induced infringement claims should be denied for all patents except the '273 Patent, the latter of which should be dismissed without prejudice.

---

[8]    The undersigned also agrees with Judge Noreika and the "majority position among courts" that post-suit knowledge may be established based on the filing of the complaint asserting infringement of the patents therein. *DSM IP Assets*, 700 F. Supp. 3d at 200. As Judge Andrews recognized, not allowing a plaintiff to amend a complaint to allege post-suit induced infringement based on an original complaint may make it "impossible or completely impractical" for a patent owner to sue the infringers of a method claim. *Wrinkl, Inc. v. Facebook, Inc.*, C.A. No. 20-1345-RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021). Indeed, one motivating factor for inducement liability is to hold liable parties that take "affirmative steps . . . to foster infringement." *Cf. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 5454 U.S. 913, 936-37 (2005) (discussing the policy rationale behind induced infringement in patent law and extending it to copyright law).

[9]    In the First Amended Complaint, there is no allegation at all that Defendant has or had knowledge of the '273 Patent. (*See* D.I. 13 ¶¶ 77-102).

3.      Post-Suit Willful Infringement

Defendant argues that the First Amended Complaint fails to state a claim of post-suit willful infringement for two reasons.  First, as with inducement, Defendant argues that an earlier pleading cannot provide the requisite knowledge to support a claim of post-suit willful infringement.  (D.I. 17 at 15-16).  And second, even if an earlier pleading could provide sufficient knowledge, Plaintiff still fails to plausibly allege "deliberate or intentional" infringement as required for willful infringement.  (D.I. 17 at 16 (quoting *Bayer Healthcare*, 989 F.3d at 988 (willful infringement requires knowledge of the patents and infringement, as well as deliberate or intentional infringement))).

The Court begins with Defendant's first argument.  Willful infringement, like induced infringement, has a knowledge requirement.  *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 377-78 (D. Del. 2021) ("A finding of willful infringement requires knowledge of both the patent and of its infringement.").  As with inducement, there is a similar split across the country and within this district on whether an original complaint can provide the knowledge required for post-suit willful infringement.  *Compare, e.g.*, *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) (Bryson, J., sitting by designation) ("The Court concludes that there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss."), *and Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) (Hall, J.) ("[I]f a defendant is on notice of a patent and the allegations of the infringement as a result of [the] filing of a pleading, there is no reason it should not be answerable for willful infringement after that date if the patentee can prove the requisite level of culpable behavior during the post-suit period." (alteration in original)), *with Wrinkl*, 2021 WL 4477022, at *7 (Andrews, J.) ("[U]nless the pieces necessary to allege post-suit

willfulness are in place before the suit is filed, I will, in the usual case, grant motions to dismiss that are entirely based on post-suit conduct. Such allegations are not plausible."). Ultimately, the Court agrees with Judge Bryson that the filing of a complaint suffices to establish the knowledge required to support a claim of post-suit willful infringement. *See IOENGINE*, 2019 WL 330515, at *7. As long as a plaintiff has plausibly alleged the required elements, a claim of post-suit willful infringement may proceed. *See, e.g., id.* at *8 ("facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery" and a defendant can always seek dismissal at summary judgment if no such facts appear during discovery).

Defendant argues that Plaintiff here nevertheless has failed to plead the requisite elements of post-suit willful infringement for any Asserted Patent. (D.I. 17 at 16-17). The Court mostly agrees. The First Amended Complaint does not state a claim for willful infringement of the '273 Patent (*see* D.I. 13 ¶¶ 97-102), the '388 Patent (*see* D.I. 13 ¶¶ 171-79), the '361 Patent (*see* D.I. 13 ¶¶ 198-206), the '040 Patent (*see* D.I. 13 ¶¶ 220-28) or the '021 Patent (*see* D.I. 13 ¶¶ 244-52). At most, Plaintiff alleges that Defendant had knowledge of these patents.[10] (*See* D.I. 13 ¶ 176 (the '388 Patent); *id.* ¶ 203 (the '361 Patent); *id.* ¶ 225 (the '040 Patent); *id.* ¶ 249 (the '021 Patent)). But that is not sufficient, particularly because knowledge of the patent is an element of inducement. Plaintiff must also allege that Defendant has knowledge of infringement of the Asserted Patents.

For all patents except the '167 Patent, Plaintiff's Prayer for Relief is the only place that any language suggestive of a willful infringement claim appears. (D.I. 13 at 75). But a motion to dismiss "tests the sufficiency of the allegations underlying a claim in the complaint, not . . . the

---

[10]     Plaintiff does not even do that for the '273 Patent – again, there is no allegation that Defendant ever had knowledge of the '273 Patent. (*See* D.I. 13 ¶¶ 77-102).

legally distinct prayer for relief." *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 2021 WL 3503805, at *6 (3d Cir. Aug. 10, 2021) (internal citations omitted)).  Indeed, the prayer for relief is not part of any claim asserted in a pleading.  *See Lima v. Newark Police Dep't*, 658 F.3d 324, 327, 332 (3d Cir. 2021); *see also Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011) ("[T]he prayer for relief is no part of the cause of action . . . ." (cleaned up)).  Beyond the Prayer for Relief here, Plaintiff fails to include any allegations related to Defendant's purported knowledge of infringement – or even willful infringement at all.  Plaintiff thus does not plausibly allege willful infringement of '273, '388, '361, '040 or '021 Patents.  The Court recommends that any claims of post-suit willful infringement for these patents be dismissed without prejudice.

For the '167 Patent, however, Plaintiff does plausibly allege that Defendant willfully infringed the '167 Patent since the case was filed.  (D.I. 13 ¶ 152).  Plaintiff alleges that Defendant gained knowledge of the '167 Patent and its infringement at least based on the filing of the original Complaint.  (*Id.* ¶ 149).  At this pleading stage, that is sufficient for the Court to plausibly infer that Defendant's continued infringement of the '167 Patent is intentional.  And although Plaintiff need not plead facts to support egregiousness, Plaintiff used language that makes clear it is, in fact, pursuing a claim of willful infringement as to the '167 Patent by using such language (D.I. 13 ¶ 152 (describing infringement as willful, wanton, malicious, etc.)).  Plaintiff has thus stated a claim for post-suit willfulness for the '167 Patent, and the Court recommends that Defendant's motion be denied as to that ground.

### D.    Marking

Defendant argues that Plaintiff failed to plead compliance with the marking requirements of § 287(a), thereby precluding Plaintiff from recovering pre-suit damages.  (D.I. 17 at 19-20 (citing *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017))).  The Court disagrees.

Generally, § 287(a)'s marking requirements do not apply to method claims, even when the patent contains method and non-method claims. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316-17 (Fed. Cir. 2009) (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed. Cir. 1983)); *but see ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334-35 (Fed. Cir. 2012) ("[I]f a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims" (quoting *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993))). If only method claims are asserted, then a plaintiff does not have to plead compliance with the marking statute. *Crown Packaging*, 559 F.3d at 1316-17; *SIPCO, LLC v. Aruba Networks, LLC*, C.A. No. 20-537-MN, 2021 WL 2363689, at *3 (D. Del. June 9, 2021) (interpreting *Crown Packaging* to hold that § 287(a) does not apply when plaintiff only asserts method claims of a patent that contains both method and apparatus claims); *see also Michigan Motor Techs., LLC v. Bayerische Motoren Werke AG*, 683 F. Supp. 3d 811, 833-34 (N.D. Ill. 2023) (harmonizing *Crown Packaging* and *American Medical* by holding that *American Medical* only applies when both method and apparatus claims of a single patent are asserted). If a plaintiff asserts both method and non-method claims from a single patent, however, then § 287(a) applies and compliance with the marking statute must be pled. *See Am. Med.*, 6 F.3d at 1538.

Defendant argues that Plaintiff previously asserted system claims of the Asserted Patents in the original Complaint and therefore the marking requirements of § 287 apply to the method claims now because method and non-method claims were both asserted at the same time. (D.I. 17 at 19-20 (citing *Rembrandt Wireless Techs. LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383-84 (Fed. Cir. 2017))). But Plaintiff never asserted any system (or apparatus) claims from the Asserted Patents. (*See generally* D.I. 1). Rather, Plaintiff alleged infringement of "at least" a certain method

claim from each of the patents asserted in the original Complaint.  (D.I. 1 ¶¶ 95, 120, 139, 166, 190, 209 & 230).  In the Court's view, that language only creates a "mere possibility" at best that Plaintiff might later "assert a non-method claim."  *SIPCO*, 2021 WL 2363689, at *3.  That is not enough to bring the method claims within the reach of § 287(a).  Because Plaintiff has only ever asserted method claims, compliance with the marking statute is not required and Defendant's motion to dismiss should be denied as it relates to pre-suit damages and marking.

### E.    Leave to Amend

Plaintiff requests leave to amend "[i]n the event the Court finds OptiMorphix's pleading deficient in any way."  (D.I. 19 at 20).  Plaintiff has not properly requested leave.  *See LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("[A] plaintiff must properly request leave to amend a complaint in order for the district court to consider whether to permit amendment.  A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)); *see also Fletcher-Harlee Corp v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007) ("In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint."); *Ramsgate Ct. Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (single sentence request in brief opposing a motion to dismiss insufficient to request leave to amend).  To the extent that Plaintiff wishes to amend its pleading to cure the deficiencies identified herein, Plaintiff may seek leave to amend using the proper procedure for doing so.[11]

---

[11]    This does not apply to the '559 Patent.  Given that the '559 Patent directed to ineligible subject matter under § 101, the Court has recommended that dismissal be with prejudice.

IV.    **CONCLUSION**

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 16) be GRANTED-IN-PART and DENIED-IN-PART.  The Court recommends that any claim of direct infringement based on any activity other than "use" under § 271(a) be dismissed with prejudice, all claims of pre-suit induced and willful infringement be dismissed without prejudice, the claim of post-suit induced infringement of the '273 Patent be dismissed without prejudice, all claims of post-suit willful infringement except as to the '167 Patent be dismissed without prejudice and all claims of infringement of the '559 Patent be dismissed with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* FED. R. CIV. P. 72(b)(2).  Any responses to the objections shall limited to ten (10) pages and filed within fourteen days (14) after the objections.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.


Dated:  January 28, 2026

_____
UNITED STATES MAGISTRATE JUDGE